UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Malcolm Hampton, ) | |
| ) | |
| Plaintiff, ) | No. 1:19-cv-05637 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| Wexford Health Sources Inc., Ghaliah ) | |
| Obaisi, independent executor of the estate ) | |
| of Saleh Obaisi, Neil Fisher, Steve Ritz, ) | |
| and Latanya Williams, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Malcolm Hampton, who injured his ankle while incarcerated at Stateville Correctional Center, brings this civil-rights lawsuit asserting claims for deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments. *See* 42 U.S.C. § 1983. Hampton also asserts state law claims for intentional infliction of emotional distress.[1] Hampton has named as defendants Wexford Health Sources Inc.; the estate of Dr. Saleh Obaisi; Drs. Neil Fisher and Steve Ritz; and physician assistant Latanya Williams. R. 29, Am. Compl.[2] The Defendants move for summary judgment, claiming that Hampton failed to exhaust

---

[1]The Court has federal-question subject matter jurisdiction over the § 1983 claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

his administrative remedies. R. 67, Defs.' Mot. For the reasons set forth below, the motion is denied.

## I. Background

In deciding the Defendants' motion for summary judgment, the Court views the evidence in the light most favorable to Hampton. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In May 2016, while Hampton was an inmate at Illinois' Stateville Correctional Center,[3] he injured his ankle playing basketball. R. 74, Pl.'s Resp. DSOF ¶ 3; R. 75, PSOF ¶ 1. He was taken to the Health Care Unit at Stateville, where he was examined by Dr. Obaisi and prescribed over-the-counter pain medication.[4] PSOF ¶¶ 2, 4; R. 75-1, Hampton Aff. I ¶ 5; R. 29-1. A week later, Hampton was still in pain and his ankle remained swollen. PSOF ¶ 3. He returned to the Health Care Unit, and Dr. Obaisi again prescribed over-the-counter

---

[3]Hampton was later transferred to the Menard Correctional Center in May 2018. R. 78, Defs.' Resp. PSOF ¶ 26.

[4]The Defendants move to strike this and other factual propositions describing Hampton's medical history in the Plaintiff's Statement of Facts because "they have no bearing on the sole question before this Court." R. 79, Defs.' Reply Br. 2. True, these statements are not material to the issue of exhaustion. But precisely because they are not material—and because the Court is not making any decisions about them here—there is no need to strike these statements.

The Defendants also move to strike Hampton's responses that do not include citations to "specific portions of the record," which ordinarily would violate Local Rule 56.1. Reply Br. 3–4. The Court declines to do so. Citations were not necessary to support the challenged responses, because Hampton was simply disagreeing with the Defendants' conclusory statements, *e.g.*, DSOF ¶ 12 (defense assertion that Plaintiff "exhausted" only an irrelevant grievance, yet exhaustion is the ultimate issue for decision), or the support for the responses could easily be found in the record, *e.g.*, Pl.'s Resp. DSOF ¶ 29 (asserting that Hampton submitted the September 2016 grievance, which is in Paragraph 13 of his three-page affidavit).

pain medication. PSOF ¶ 4; Hampton Aff. I ¶ 6. Over the next several months, Hampton's pain persisted, and he had difficulty putting any weight on his injured ankle. *E.g.*, PSOF ¶ 3; R. 29-6 at 1. Hampton repeatedly requested additional testing and treatment—requests that the Defendants repeatedly denied. PSOF ¶¶ 6–7; Hampton Aff. I ¶ 8.

According to Hampton, he wrote three grievances about the inadequate treatment of his ankle injury. He sent his first grievance in September 2016; the second in October 2016; and the third in October 2017. PSOF ¶¶ 11–21; Hampton Aff. I ¶¶ 13–20; R. 29-11. Hampton never received a response to his first grievance; his second grievance was initially reviewed but, after Hampton submitted an appeal, he never received a decision; and his third grievance was rejected as untimely. PSOF ¶¶ 13–20; Hampton Aff. I ¶¶ 13–21; R. 1 at 55. Hampton then filed this § 1983 action in August 2019. R. 1, Compl. The Defendants seek summary judgment, arguing that there is "no evidence" Hampton appealed his grievance and that he failed to exhaust his administrative remedies.[5] R. 69, Defs.' Br. at 11. Hampton, in response, contends

---

[5] The Defendants suggest that the case law is "unclear" as to what procedural vehicle is proper for addressing exhaustion and that judges "take all manner of approaches" in doing so, sometimes evaluating exhaustion as a motion to dismiss and other times as a motion for summary judgment. Defs.' Br. 2–3. But this actually is not all that unusual: affirmative defenses sometimes require review under different procedural vehicles based on the circumstances of the case. For instance, a statute of limitations defense—a classic example of an affirmative defense—may be reviewed as a Rule 12(c) motion for judgment on the pleadings if the pleadings themselves set forth everything necessary to establish the defense; but if extrinsic evidence is needed, then the defense may instead be reviewed on a Rule 56 summary judgment motion. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("If a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground," but if "there is a conceivable set of facts … that would defeat a statute-of-limitations defense,

that there are disputes of material fact that must be resolved at a *Pavey* hearing. *See Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008) (holding that disputed factual questions on exhaustion must be resolved by the district court judge after conducting a hearing).

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of*

---

questions of timeliness are left for summary judgment (or ultimately trial)." (cleaned up)). The varying "manner of approaches" observed by the Defendants, then, is consistent with the way courts review other affirmative defenses.

In any event, the parties do not dispute here, and the Court agrees, that summary judgment is the proper procedural vehicle in this case.

4

*Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

The Prison Litigation Reform Act instructs that no § 1983 action "shall be brought with respect to prison conditions" by a prisoner in a correctional facility "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To successfully exhaust administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules" set by his prison's grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (cleaned up);[6] *accord Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating."). But a prisoner need only take steps that are "available" to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is "available" only if it is "capable of use to obtain some relief for the action complained of." *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (cleaned up). Defendants in prison-conditions cases bear the burden of proving that a prisoner has failed to exhaust. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must

---

[6]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

Here, the Illinois Administrative Code sets out the process Hampton was required to complete. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("State law determines the administrative remedies that a state prisoner must exhaust for PLRA purposes."). Under that process, a prisoner must first attempt to resolve the problem through his counselor, failing which the prisoner "may file a written grievance" with a Grievance Officer "within 60 days after the [problem's] discovery." 20 Ill. Admin. Code § 504.810(a)–(b) (2003), *amended at* 41 Ill. Reg. 3869 (effective Apr. 1, 2017). The Grievance Officer reviews the grievance and reports her findings to the Chief Administrative Officer, who advises the prisoner of a decision in writing. *Id.* § 504.830(d). The prisoner may then appeal this decision to the statewide Director of the Department of Corrections, who determines if the matter requires further review by the Administrative Review Board. The Board, after evaluating the appeal, submits to the Director a written report on its findings and recommendations. *Id.* § 504.850(a)–(b), (e). The Director then makes a final determination in writing. *Id.* § 504.850(f).

Hampton attempted to complete this process three times. He sent his first medical-care grievance to his counselor in September 2016. Hampton Aff. I ¶ 13. But when Hampton followed up with the counselor over a week later, the counselor could not find the grievance, so Hampton filed a second grievance in October 2016. *Id.* ¶¶ 13–14; R. 29-11 at 1–2. This second grievance was received and reviewed by his

6

counselor, who denied Hampton's medical-care requests. R. 29-11 at 1–2. The Chief Administrative Officer agreed with the counselor's decision, and in January 2017, Hampton was notified of the decision in writing. *Id.*; Hampton Aff. I ¶ 16. As required by the prison's procedures, Hampton appealed the decision on January 26, 2017, by mailing to the Board his signed appeal form, copies of the grievance and decision, and his letter detailing the relief he wished to receive. Hampton Aff. I ¶ 17. Hampton waited for a response from the Board—but no response ever came. *Id.* ¶ 18. After six months had passed, Hampton wrote to the Board and to his counselor asking for an update on his appeal. *Id.* ¶¶ 17–18. He again received no response. *Id.* Hampton then filed a third grievance in October 2017. *Id.* ¶ 19. That grievance was returned to him as untimely filed, after which Hampton filed this lawsuit. *Id.* ¶ 21; Compl.

In sum, according to Hampton, he filed three written grievances with prison officials, followed up when he received no response, and appealed the one decision he did receive. Viewing the evidence in the light most favorable to Hampton, he exhausted the administrative remedies available to him. The Defendants argue that the Board has no record of receiving Hampton's appeal, so he must have failed to submit it. Defs.' Br. at 6; Pl.'s Resp. DSOF ¶ 14A. But Hampton avers in his affidavit that he "signed [his] Appeal to the Director" and "sent [it] to the Administrative Review Board" at its P.O. Box mailing address. Hampton Aff. I ¶ 17. Although it is unclear what happened to the appeal after Hampton sent it, the inference that must be drawn here—in Hampton's favor, *see Scott*, 550 U.S. at 378—is that Hampton properly mailed his appeal to the Board, which was the final required step of the

7

prison's grievance process. The Board's subsequent failure to respond to the appeal rendered that remedy unavailable. *See, e.g.*, *Turley v. Rednour*, 729 F.3d 645, 650 n.3 (7th Cir. 2013) ("[W]hen the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted his administrative remedies."); *Dole v. Chandler*, 438 F.3d 804, 808–12 (7th Cir. 2006) (concluding that, even though plaintiff's grievance was lost in the mail and never reached the Board, plaintiff exhausted his administrative remedies because he had properly placed his grievance in the mail). The Defendants argue that, unlike the plaintiff in *Dole*, Hampton "has no proof" that he mailed his appeal to the Board, other than his "self-serving[]"affidavit. Defs.' Reply Br. at 7. But it is the Defendants—not Hampton—who bear the burden of proving failure to exhaust, *Thomas*, 787 F.3d at 847, and at this summary judgment stage, the Court credits the personal-knowledge-based statements in Hampton's affidavit. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014) ("Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment.").

The Defendants also argue that Hampton "never availed himself of" the good-cause provision of the Administrative Code, which provides that "if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." 20 Ill. Admin. Code § 504.810(a). In other words, the Defendants argue that when Hampton's third grievance was returned to him as untimely, he should have gone to the Board and explained that his prior grievances had gotten lost in the mail. But nothing in the good-cause provision required Hampton to do so. *See*

8

20 Ill. Admin. Code § 504.850(a) (requiring grievant to appeal "after receiving the response of the Chief Administrative Officer" on the merits of the grievance). Nor is there any evidence that the prison instructed Hampton to appeal the counselor's timeliness decision. And Hampton's third grievance aside, he filed two other timely grievances about his medical care. *See Turley*, 729 F.3d at 650 ("The state's argument that [plaintiff]'s latter two grievances … were not exhausted is unpersuasive since the original grievance suffices."). He exhausted his remedies after the prison failed to respond to those grievances. This is not a case where the grievant "had an opportunity to exhaust, but he simply chose not to." *McCoy v. Gilbert*, 270 F.3d 503, 508 (7th Cir. 2001).

Similarly, the defense tries to foist another non-code-based requirement on Hampton, arguing that he failed to "request further information regarding the procedure from their counselors." 20 Ill. Admin. Code § 504.810(e). Requesting further information from counselors is not a necessary step in the prison's grievance procedures. *See id.* §§ 504.810, .830, .850; *see also Dole*, 438 F.3d at 806–07 (describing the steps in the Illinois prisoner grievance process). And even if this were a requirement, Hampton avers that in fact he did ask his counselors about the status of his filed grievances on multiple occasions, but received no response. Hampton Aff. I ¶¶ 13–18. Viewing the facts in the light most favorable to Hampton, his grievances remained "unresolved through no apparent fault of his own." *Dole*, 438 F.3d at 811.

9

## IV. Conclusion

Because the Defendants have not shown that they are entitled to judgment as a matter of law on the issue of exhaustion, the motion for summary judgment is denied. The Court sets this matter for an evidentiary hearing to resolve the exhaustion question. *See Pavey*, 544 F.3d at 742. The parties are directed to confer and then jointly file a status report with mutually available dates (or ranges of dates) for a *Pavey* hearing, as well as the estimated length of the hearing. The status report is due on October 3, 2023. The status hearing of October 6, 2023, is reset to October 13, 2023, at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 25, 2023